UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHAWN M. KESLING,<br><br>               Plaintiff,<br><br>  v.<br><br>MELISA BECIROVIC; JOSH TEWALT; TIMOTHY R. McKAY; DAVID DIETZ; JAY CHRISTENSEN; STATE OF IDAHO; and JOHN DOES 1-4,<br><br>               Defendants. | Case No. 1:19-cv-00352-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

       The Clerk of Court conditionally filed Plaintiff Shawn M. Kesling's Complaint as a result of Plaintiff's status as an inmate and in forma pauperis request. Plaintiff has since filed an Amended Complaint. *See* Dkt. 6. The Court now reviews the Amended Complaint to determine whether it should be summarily dismissed in whole or in part under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order directing Plaintiff to file a second amended complaint if Plaintiff intends to proceed.

**1.    Screening Requirement**

       The Court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate.

The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

2. **Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted).

3. **Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC") currently incarcerated at Idaho State Correctional Center. Plaintiff's claims arise from Plaintiff's complaints about his case manager, Defendant Melisa Becirovic.

In preparation for his August 2019 parole hearing, Plaintiff and Becirovic met "on

numerous occasions" to develop Plaintiff's Self-Initiated Progress Report to present to the commission. *See Am. Compl.*, Dkt. 6, at 8. To be considered for parole, Plaintiff was required to include in that Report information about "verifiable housing, employment and treatment plan[s]" available to Plaintiff if he were released. *Id*. Plaintiff asserts that, because of Defendant Becirovic's "failure to follow through with time sensetive [sic] appointments and commitments," his Report did not contain this required information. The commission denied Plaintiff parole and "continued proceedings indefinitely." *Id*. at 8-9.

Plaintiff was frustrated with this development and apparently expressed his concerns about Becirovic to two non-defendant program managers who supervise Becirovic. *Id*. at 9. Plaintiff does not describe the substance of his communications with these managers.

Plaintiff also wrote a letter "directly to defendant Becirovic expressed his concerns," but did not send the letter. *Id*. Plaintiff's work supervisors "vetted" the letter and advised Plaintiff regarding it. The letter was destroyed after Plaintiff decided not to send it. *Id*. Plaintiff does not describe the substance of the letter.

Within a few weeks of the parole hearing, an unidentified defendant, John Doe 3, "communicated the existence of [Plaintiff's] frustrations to Ms. Becirovic"; Becirovic also "became aware of the previously destroyed letter." *Id*. Becirovic then requested an investigation, evidently believing that Plaintiff's stated concerns might have been threats.

Two other unidentified defendants, John Does 1 and 2, conducted the investigation. They questioned Plaintiff about the alleged threats against Becirovic, searched Plaintiff's cell, and seized legal paperwork having to do with an "ongoing lawsuit against the IDOC,"

deeming that paperwork "suspicious." *Id*. at 10.

Prior to these events, Plaintiff had been housed in an "incentive tier," which apparently made it easier for him to have a prison job. *Id*. at 8, 10. The day after the cell search, and evidently as a result of the investigation, Plaintiff was transferred out of that incentive housing unit. Though it appears that Plaintiff has been able to keep his prison job to date, he "remains under investigation for alleged, yet unsubstantiated threats, because of Defendant Becirovic's report and request to investigation him." *Id*. Plaintiff "stands to lose" 33% of his income if he loses his job. *Id*.

Plaintiff brings civil rights claims against Becirovic, John Doe 1 and John Doe 2, alleging violations of his First, Eighth, and Fourteenth Amendment rights. *Id*. at 10–12, 14–15. Plaintiff also asserts state law claims against not only those three defendants, but also Defendants McKay, Tewalt, Dietz, and Christensen—all of whom appear to be supervisory or managerial officials. *Id*. at 12–13.

**4.     Discussion**

Plaintiff has not alleged sufficient facts to proceed with the Complaint. The Court will, however, grant Plaintiff 28 days to amend the Complaint. Any second amended complaint should take into consideration the following.

*A.     Section 1983 Claims*

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be

liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045. However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205-09.

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011). Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or training official had "knowledge of the unconstitutional conditions" through such a pattern of violations— including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those conditions, that official can be said to have acquiesced "in the unconstitutional conduct of his subordinates" such that a causal connection between the supervisor and the constitutional violation is plausible. *Starr*, 652 F.3d at 1208.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

### i. First Amendment Claims

The First Amendment to the United States Constitution guarantees freedom of expression, including the right to free speech and to petition the government for redress of grievances. Inmates retain some right to free expression in prison. However, that right is subject to limitations arising "both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

The standard governing First Amendment claims of incarcerated individuals was outlined by the United States Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987). There, the Court examined the free speech issue in the context of prison officials prohibiting correspondence between inmates residing at different state institutions. The Court held that "when a prison regulation [or an official's action] impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89.

The *Turner* Court identified four factors to consider when determining whether a regulation or a prison official's action is valid: (1) whether there is a "rational connection between the prison regulation [or action] and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" at a "de minimis cost" exist, which "may be evidence that the regulation [or action] is not reasonable, but is an

exaggerated response to prison concerns." *Id.* at 89-93.

This analysis appropriately allows prison officials substantial leeway in the management of their prisons because "[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Id.* at 89. Federal courts must apply the *Turner* test so as to "accord great deference to prison officials' assessments of their interests." *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir. 1988).

The First Amendment also includes the right to be free from retaliation by state actors for exercising constitutional rights, such as the right to free speech or to petition for redress. An inmate asserting a retaliation claim must show the following: "(1) ... that a state actor took some adverse action against the inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) [that] the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). "[B]are allegations" of a retaliatory motive are insufficient to support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."). When analyzing a jail official's proffered reasons for allegedly retaliatory conduct, the Court must "afford appropriate deference and flexibility" to that official. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (internal quotation marks omitted).

Not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry asks whether the official's action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted).

A plaintiff asserting a retaliation claim under § 1983 also "must show a causal connection between a defendant's retaliatory animus and [the plaintiff's] subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (*Bivens* action). Retaliatory motivation is not established simply by showing an adverse action by the defendant *after* protected speech; rather, the plaintiff must show a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'"). Therefore, although the timing of an official's action can constitute circumstantial evidence of retaliation—if, for example, an adverse action was taken shortly after the official learned about an inmate's exercise of protected conduct—there generally must be something more than mere timing to support an inference of retaliatory intent. *Pratt*, 65 F.3d at 808.

The causal nexus requirement of a retaliation claim is a "but-for" causation test. If the adverse action would have been taken even without the inmate's exercise of protected conduct, the plaintiff cannot satisfy the causation element of his claim. *Hartman*, 547 U.S. at 260.

Finally, even if an inmate proves that his protected conduct was the but-for cause of

an adverse action by a prison official, the inmate's retaliation claim fails so long as that action also reasonably advanced a legitimate penological interest. A prison unquestionably has a legitimate interest in maintaining institutional order, safety, and security. *O'Lone*, 482 U.S. at 348; *Rizzo*, 778 F.2d at 532. "The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt*, 65 F.3d at 806.

Plaintiff's freedom of expression and retaliation claims, as set forth in the Amended Complaint, are implausible. It was reasonable for Defendant Becirovic—having been told that Plaintiff was angry enough toward her to have written a letter about it, a letter that, she was informed, might have contained threats—to request an investigation. And, having received that request, it was reasonable for Defendant John Does 1 and 2 to investigate. None of these Defendants knew the content of Plaintiff's destroyed letter, nor did they know what precisely Plaintiff had said about Becirovic. An investigation into the issue was reasonably related to the legitimate penological interest in ensuring staff safety. Therefore, Plaintiff may not proceed on his First Amendment claims at this time.

Moreover, the Amended Complaint does not plausibly allege that requesting or conducting an investigation in these circumstances—or, for that matter, searching an inmate's cell or taking paperwork from that cell—would chill or silence a prisoner of ordinary firmness from engaging in protected conduct. *See Mendocino Envt'l Ctr.*, 192 F.3d at 1300. Finally, Plaintiff offers only "bare allegations" that Defendants acted with a retaliatory motive. *Rizzo*, 778 F.2d at 532 n.4. Therefore, he has not stated a plausible First Amendment claim.

ii. Due Process and Equal Protection Claims

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law; a person cannot obtain relief on a due process claim unless he demonstrates that he was deprived of one of these protected interests. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989). Because liberty interests are "generally limited to freedom from restraint," the Supreme Court has held that a prisoner possesses a liberty interest under the federal Constitution only when a change occurs in confinement that imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Like most constitutional claims of inmates, due process claims are subject to the deferential *Turner* analysis. *See Washington v. Harper*, 494 U.S. 210, 225 (1990) (rejecting under *Turner* a due process challenge to involuntary medication).

The Fourteenth Amendment also includes the Equal Protection Clause, which guards against arbitrary discrimination by government officials. Although "all persons similarly circumstanced shall be treated alike" by governmental entities, *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920), "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same," *Tigner v. Texas*, 310 U.S. 141, 147 (1940). And even where similarly situated persons are treated differently by the state, "state action is presumed constitutional and 'will not be set aside if any set of facts reasonably may be conceived to justify it.'" *More v. Farrier*, 984 F.2d 269, 271 (9th Cir. 1993) (quoting *McGowan v. Maryland*, 366 U.S. 420, 426 (1961)). Absent evidence of invidious discrimination, the federal courts should

defer to the judgment of prison officials. *See id.* at 277; *Youngbear v. Thalacker*, 174 F. Supp. 2d 902, 916 (D. Iowa 2001) ("There can be no 'negligent' violations of an individual's right to equal protection.... There is no evidence from which the court may infer that the defendants' asserted reasons for delaying the construction of a sweat lodge at the [prison] were a pretext for discrimination.").

Equal protection claims alleging disparate treatment or classifications generally are subject to a heightened standard of scrutiny if they involve a "suspect" or "quasi-suspect" class, such as race, national origin, or sex, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985). Otherwise, equal protection claims generally are subject to a rational basis inquiry. *See Heller v. Doe*, 509 U.S. 312, 319-20 (1993). In a rational basis analysis, the relevant inquiry is whether Defendants' action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987) (quotation omitted).

In addition to the deference inherent in a rational basis inquiry, an additional layer of deference to prison officials is required under *Turner*. *See Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) ("In the prison context, ... even fundamental rights such as the right to equal protection are judged by a standard of reasonableness—specifically, whether the actions of prison officials are reasonably related to legitimate penological interests." (quotation omitted)). That is, any rational basis for dissimilar treatment in prison will defeat a prisoner's equal protection claim. *Id*.

Plaintiff's due process and equal protection claims are not plausible. As set forth

above with respect to Plaintiff's First Amendment claims, Defendants' investigation—undertaken after they received information that Plaintiff was angry with Becirovic and might have threatened her—was reasonably related to containing, and eliminating, threats against prison officials.

### iii. Eighth Amendment Claims

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, prisoners must show that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). Prison officials are required to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). However, "the Constitution does not mandate comfortable prisons," and to the extent that prison conditions "are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment, and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

As for the objective prong of the analysis, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, the deprivation alleged must be objectively sufficiently harmful or, in other words, sufficiently "grave" or "serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

With respect to the subjective prong of an Eighth Amendment violation, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319.

To exhibit deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

The harms Plaintiff allegedly suffered as a result of Defendants' actions are (1) being investigated and searched, (2) being transferred to a different housing unit, and (3) being subject to potential dismissal from his prison job. These things simply are not included in the "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at

834. The Constitution is reserved for more serious matters. *See Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) ("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."). Therefore, Plaintiff's Eighth Amendment claims are implausible.

### B. State Law Claims

In addition to § 1983 claims, Plaintiff asserts state law claims of defamation (slander and libel), intentional infliction of emotional distress, and negligence. *Am. Compl.* at 12–13.

Under Idaho law, a defamation claim against a non-public figure, such as Plaintiff, requires that the plaintiff show (1) that the defendant "communicated information concerning the plaintiff to others," (2) "that the information was defamatory," and (3) "that the plaintiff was damaged because of the communication." *Clark v. The Spokesman-Review*, 163 P.3d 216, 219 (Idaho 2007). A defamatory statement is one that "tends to harm a person's reputation, usually by subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business." *Elliott v. Murdock*, 385 P.3d 459, 465 (Idaho 2016) (internal quotation marks and alterations omitted). Not all damaging communications constitute defamation. For example, "[s]tatements of opinion," as well as statements of fact "that cannot be proved false," are not defamatory.

Plaintiff has not plausibly alleged that any communication made by any defendant was defamatory. Indeed, he does not describe the relevant statements at all. *Irish v. Hall*, 416 P.3d 975, 980 (Idaho 2018) (internal quotation marks omitted). Thus, he may not proceed on his defamation claims.

To recover for a claim of intentional infliction of emotional distress under Idaho law, the plaintiff must establish four elements: "(1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *Evans v. Twin Falls Cty.*, 796 P.2d 87, 97 (Idaho 1990). The fourth factor, that the distress is severe, requires that "the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.* (quoting Restatement (Second) of Torts, § 46 cmt. j. There generally must be "physical manifestations" of emotional distress, or evidence that the victim was "hampered in the performance of [his] daily functions," for emotional distress to be considered severe.

Nothing in the Amended Complaint plausibly suggests that any defendant engaged in extreme or outrageous conduct. Nor does it support a reasonable inference that Plaintiff suffered severe emotional distress. Therefore, Plaintiff has not stated a claim for relief with respect to his emotional distress claims.

The elements of a negligence claim under Idaho law are "(1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage." *McDevitt v. Sportsman's Warehouse, Inc.*, 255 P.3d 1166, 1169 (Idaho 2011). A person breaches a duty when that person (1) acts in a manner in which a reasonable person would not, or (2) fails to act in the manner in which a reasonable person would. *See Steed v. Grand Teton Council of the Boy Scouts of Am., Inc.*, 172 P.3d 1123, 1129 n.3 (Idaho 2007) (describing the reasonable person standard as a "negligence

standard of care")).

Plaintiff's negligence claims are implausible for reasons similar to those discussed above with respect to his constitutional claims. It was eminently reasonable for prison officials to investigate—or to request an investigation into—alleged threats made against a prison official by an inmate. Even if the Plaintiff's "concerns" about Becirovic were not actually threats, no named Defendant could have known that at the time. Becirovic heard about unidentified statements made by Plaintiff against her and requested an investigation. John Does 1 and 2 reasonably decided to investigate. Because Defendants' response to the allegations of a potential threat was reasonable, Defendants did not act negligently.

Further, because the Complaint fails to state a federal claim upon which relief may be granted, the Court would decline to exercise supplemental jurisdiction over Plaintiff's state law claims in any event. *See* U.S.C. § 1367(c). If Plaintiff is allowed to proceed on a federal claim in a second amended complaint, and if the second amended complaint states a plausible claim under Idaho law, the Court will reconsider the issue of supplemental jurisdiction.

5.  **Standards for Second Amended Complaint**

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of

official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular federal constitutional provision (or state law provision) Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met—for example, Plaintiff must allege facts satisfying the elements of a First or Fourteenth Amendment claim; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant.

Further, any second amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th

Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The second amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as the "Second Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files a second amended complaint, Plaintiff must also file a "Motion to Review the Second Amended Complaint." If Plaintiff does not amend within 28 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion to Review the Amended Complaint (Dkt. 7) is GRANTED. Plaintiff has 28 days within which to file a second amended complaint as described above. If Plaintiff does so, Plaintiff must file (along

with the second amended complaint) a Motion to Review the Second Amended Complaint. If Plaintiff does not amend within 28 days, this case may be dismissed without further notice.

2. Because the amended complaint fails to state a claim upon which relief may be granted, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 8) is DENIED.

DATED: December 9, 2019

_____
David C. Nye
Chief U.S. District Court Judge